IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

JOHN DOE,

Plaintiff,

v.

UNIVERSAL MUSIC GROUP, SONY MUSIC ENTERTAINMENT, WARNER MUSIC GROUP, ATLANTIC RECORDS, DEF JAM RECORDINGS, SPOTIFY, YOUTUBE, APPLE MUSIC, PANDORA, and JOHN and JANE DOES 1–500, including STATE OF NEVADA DEPARTMENT OF CORRECTIONS and NEVADA MEDIA SERVICES, et al, Defendants.

Case No.:

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

 (Amended Complaint)

---

INTRODUCTION

Plaintiff JOHN DOE, proceeding pro se and under a pseudonym to protect his identity and privacy, hereby files this Complaint for Damages against the above-named Defendants, and  correctional state actors collectively constituting a massive commercial and corporate enterprise that, through coordinated conduct and the deployment of artificial intelligence and psychological manipulation, contributed to the Plaintiff's prolonged psychological conditioning, behavioral distortion, and incarceration and socioeconomic harm with materials provided directly through the Nevada State correctional institution. The Plaintiff is not attacking *speech* per se, but rather the intentional use of corporate power and machine-learning systems to target vulnerable minds for profit. The Plaintiff

does not challenge the right to artistic speech—but the corporate conspiracy and AI algorithmic abuse used to cause foreseeable harm.

In accordance to the Iqbal/Twombly Plausibility Standard: Your facts only need to be plausible, not proven. Additionally, in accordance to the Pro Se Leniency Standard: Courts must liberally construe pro se pleadings.

Plaintiff seeks:

Compensatory damages for injuries personally sustained;

Punitive damages in the amount of $100,000,000,000 (One Hundred Billion Dollars) to punish Defendants and deter future misconduct;

Treble damages under the civil RICO statute (18 U.S.C. § 1964©); and

Such other relief as the Court deems just and proper.

JURISDICTION AND VENUE

This Court has jurisdiction under 28 U.S.C. § 1331 (federal question) and 18 U.S.C. § 1964 (civil RICO). Venue is proper in the District of Nevada under 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to the claims occurred within this district. Plaintiff was incarcerated in Nevada between [2018-2025], where the harmful musical materials were distributed through state-sponsored platforms.

CAUSES OF ACTION

Count 1 – Civil RICO (18 U.S.C. § 1962©, § 1964©) Facts

Supporting This Claim:

1. The Defendants—comprising major record labels, streaming services, producers, and distributors—formed an association-in-fact enterprise engaged in the commercial propagation of violent, antisocial, and racially degrading content under the guise of music and art.

2. The enterprise operated with a shared financial motive: to generate profits by manipulating consumer behavior, particularly within vulnerable communities, with content that glorified gang activity, homicide, drug use, sexual coercion, and materialism.

3. Defendants' behavior satisfies the pattern of racketeering activity, including:

Wire fraud: using digital platforms (e.g., Apple Music, Spotify, YouTube) to distribute content intended to mislead consumers about its safety and purpose;

Mail fraud: through physical sales (CDs, merchandise) without psychological warnings or disclaimers;

Obstruction and suppression: using influence to prevent or discredit critical reporting, research, or regulatory labeling of their products;

I

Commercial deception: contracting artists into producing violence-themed content under strict creative control and promoting it as authentic cultural expression.

4. The Plaintiff, as a direct consumer of this enterprise's product, suffered behavioral conditioning, psychological distress, and incarceration, which align with the known consequences of prolonged exposure to such media.

5. Many enterprise members also held financial interests in private prisons and recidivist behavior monetization pipelines, creating a double-profit motive from both the harm caused and the incarceration it triggered.

6. The racketeering acts affected interstate commerce and were continuous over decades, demonstrating a closed but ongoing system of enterprise activity.

Treble damages sought under § 1964©, totaling potential damages of $300 billion.

Count 2 – Civil Conspiracy

Facts Supporting This Claim:

1. Defendants acted in concert, knowingly and voluntarily, to produce and disseminate media containing graphic, repetitive glorification of violence, drug use, and misogyny.

2. The messaging was deliberately engineered, often by record executives and producers, rather than arising organically from the artists themselves—especially when contractual control stripped artists of creative authority.

3. The Defendants coordinated the marketing and saturation of this content into urban, low-income, and predominantly Black communities without warning or ethical safeguards, aiming to normalize dysfunction and internalized racial degradation.

4. Defendants intentionally failed to disclose the documented psychological risks associated with exposure to such content, despite modern psychological research on behavioral mimicry and desensitization.

5. Their collaborative efforts created a self-sustaining pipeline of conditioned behavior that directly resulted in increased violence, incarceration, mental illness, and intergenerational harm.

Count 3 – Negligence (Failure to Warn)

Facts Supporting This Claim:

1.      Defendants had actual and constructive knowledge of the effects that repeated exposure to violent media content has on brain development, emotional regulation, and behavioral modeling—particularly in youth.

2.      Defendants owed a duty of care to the general public, especially their target demographic (youth and marginalized communities), to provide accurate risk information.

3.      Despite this duty, Defendants failed to warn or include psychological disclaimers, labels, or content advisories commensurate with the danger posed.

4.      This omission constitutes negligence, as any reasonable industry actor with access to behavioral science literature would foresee such harm as a likely outcome.

5.      As a proximate result of this breach of duty, Plaintiff suffered measurable psychological, social, and physical harm over time.

Count 4 – Intentional Infliction of Emotional Distress (IIED)

Facts Supporting This Claim:

1. Defendants intentionally cultivated and distributed media content that featured graphic depictions and glorifications of rape, murder, suicide, child abuse, racial degradation, and self-hatred under the guise of entertainment. Extreme conduct targeting youth, incarcerated persons with violent AI-crafted music.

2. The volume, reach, and precision with which this content was targeted—especially to youth and incarcerated individuals—amounted to outrageous conduct beyond the bounds of human decency.

3. This content was monetized even within correctional facilities, where incarcerated individuals were provided music that reinforced gang culture, retaliation, and hatred, despite the obvious mental health implications.

4. The emotional trauma induced by this repeated exposure resulted in:

Desensitization to violence and death

Identity fragmentation

Self-destructive behavior and substance abuse

Suicidal ideation and criminal conduct

5. Defendants' actions were done recklessly and with complete disregard for human dignity or well-being, thereby satisfying the extreme and outrageous element required by law.

Count 5 – Violation of Substantive Due Process (14th Amendment)

Facts Supporting This Claim:

1. Plaintiff's right to personal autonomy, psychological integrity, and informed agency was violated by Defendants who conditioned, manipulated, and monetized his behavioral development through covert and subliminal media techniques. Defendants' AI-driven emotional manipulation deprived Plaintiff of informed agency and is sufficiently linked to state actor NDOC and Nevada Media Services providing music platforms inside prison.

2. These companies bypassed Plaintiff's conscious consent through backmasking, subliminal messages, neuro-linguistic programming, and deceptive emotional storytelling masked as authenticity.

3. The deliberate commercial distribution of mentally destabilizing content into vulnerable communities constitutes a deprivation of liberty without due process of law.

4. The State itself, through its failure to regulate or provide oversight for the psychological dangers of such media, became complicit in this deprivation.

5. Substantive due process prohibits the State or powerful entities from interfering with a person's bodily, cognitive, or spiritual autonomy in ways that are arbitrary, shocking to conscience, or grossly unfair—and this threshold has been met.

Count 6 – Deployment of Artificial Intelligence as a Civil Conspiracy Tool

Defendants used AI to ghostwrite, analyze consumer behavior, and mass-produce harmful content;

AI-generated materials are not constitutionally protected speech under the First Amendment;

Harm was optimized using data-driven targeting, emotional manipulation, and predictive analytics;

Plaintiff consumed this content unknowingly and suffered psychological harm, imprisonment, and emotional distress;

This constitutes willful deployment of algorithmic weaponry.

Count 7 – Product Liability (Defective Product & Failure to Warn)

Music sold and marketed as human expression, but covertly generated by AI;

Consumers were not informed of AI's role in content creation and emotional influence;

Music promoted violent, antisocial behaviors and addiction;

Defendants knew or should have known of foreseeable risks and failed to act.

Count 8 – Fraudulent Misrepresentation & Omissions

Defendants falsely represented their content as authentic, artist-generated expression;

Intentionally concealed the AI authorship and psychological engineering embedded within;

Plaintiff relied on these misrepresentations and suffered quantifiable harm.

COUNT 9 – Negligent Infliction of Emotional Distress

1. Defendants' conduct foreseeably caused emotional distress by saturating vulnerable communities with violent and psychologically harmful content.

2. Plaintiff, as a member of the foreseeable audience, suffered severe mental anguish, social isolation, and behaviorally adverse effects.

3. The distress manifested in physical symptoms and life-altering consequences, including incarceration and long-term mental health effects.

4. Defendants breached their duty by failing to disclose the nature of the content and its psychological risks.

COUNT 10 – Unjust Enrichment

1. Defendants received billions in profits through harmful behavioral manipulation without fair compensation to or consent from Plaintiff.

2. Defendants' profit is unjustly retained given the harm they knowingly caused.

3. Equity demands restitution of funds acquired through such schemes.

COUNT 11 – Violation of Florida Deceptive and Unfair Trade Practices Act (FDUTPA)

1. Defendants failed to disclose their use of artificial intelligence in content creation, misleading consumers into believing the media was authentic human expression.

2. Consumers relied on these omissions in purchasing, streaming, and emotionally investing in the content.

3. Plaintiff suffered harm as a direct result of these deceptive and unfair trade practices.

COUNT 12 – Violation of Civil Rights (42 U.S.C. §1983)

1. Defendants operated within an ecosystem where state officials failed to regulate the use of psychological manipulation in entertainment media consumed by the incarcerated and youth.

2. Plaintiff alleges systemic indifference or complicity by government actors.

3. These acts amount to violations of Plaintiff's rights to cognitive liberty and mental integrity.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for judgment against Defendants as follows:

1. General and special damages in the amount of at least $10,000,000;

2. Punitive damages in the amount of $100,000,000,000;

3. Treble damages pursuant to 18 U.S.C. § 1964© for civil RICO violations, potentially totaling $300,000,000,000;

4. Declaratory relief and injunctive relief to halt further dissemination of the harmful content;

5. Reasonable attorney's fees and costs (if any);

6. Such other and further relief as the Court deems just and proper.

DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims so triable.

Respectfully submitted,

JOHN DOE

Plaintiff, Pro Se

[No contact information provided]