UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

JOHN DOE,

                                    Plaintiff,

        v.

UNIVERSAL MUSIC GROUP, *et al.*,

                                    Defendants.

Case No. 3:25-cv-00333-ART-CLB

ORDER ADOPTING REPORT AND
RECOMMENDATION IN PART

John Doe ("Plaintiff") brings this action against Defendants Universal Music Group, Sony Music Entertainment, Warner Music Group, Atlantic Records, Def Jam Recordings, Spotify, YouTube, Apple Music, Pandora, State of Nevada Department of Corrections, Nevada Media Services, and John/Jane Does for civil RICO and conspiracy claims related to his allegation that the Defendants constitute "a massive commercial and corporate enterprise that, through coordinated conduct and deployment of artificial intelligence and psychological manipulation, contributed to [Plaintiff's] prolonged psychological conditioning, behavioral distortion, and incarceration and socioeconomic harm with materials provided directly through the Nevada State correctional institution." (ECF No. 11.)

Before the Court is Plaintiff's application to proceed *in forma pauperis* ("IFP") (ECF No. 3), amended *pro se* civil rights complaint (ECF No. 11), motion for recusal (ECF Nos. 3-6), two motions to proceed under a pseudonym (ECF Nos. 3-7, 12), and a motion to expedite screening review, (ECF No. 15.) Magistrate Judge Carla L. Baldwin issued a Report and Recommendation ("R&R") recommending that Plaintiff's application to proceed IFP be granted, his amended complaint dismissed, and his other motions denied with prejudice. (ECF No. 17.) Plaintiff objected to the R&R. (ECF No. 19.)

        //

        //

## I.    LEGAL STANDARD

### a. Screening Standard

Prior to ordering service on any defendant, the court is required to screen an in forma pauperis complaint to determine whether dismissal is appropriate under certain circumstances. *See Lopez v. Smith*, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc) (noting the in forma pauperis statute at 28 U.S.C. § 1915(e)(2) requires a district court to dismiss an in forma pauperis complaint for the enumerated reasons). Such screening is required before a litigation proceeding in forma pauperis may proceed to serve a pleading. *Glick v. Edwards*, 803 F.3d 505, 507 (9th Cir. 2015).

"[T]he court shall dismiss the case at any time if the court determines that – (A) the allegations of poverty is untrue; or (B) the action or appeal – (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(A), (B)(i)- (iii).

Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and 28 U.S.C. § 1915(e)(2)(B)(ii) tracks that language. When reviewing the adequacy of a complaint under this statute, the court applies the same standard as is applied under Rule 12(b)(6). *See, e.g.*, *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) ("The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim."). Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000) (citation omitted).

The court must accept as true the allegations, construe the pleadings in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's

favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Allegations in pro se complaints are "held to less stringent standards than formal pleadings drafted by lawyers[.]" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotations marks and citation omitted).

A complaint must contain more than a "formulaic recitation of the elements of a cause of actions," it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more. . . than. . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (citation and quotation marks omitted). At a minimum, a plaintiff should include "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### b. Review of Reports and Recommendations

Magistrate judges are empowered to issue reports and recommendations on dispositive issues, which district judges may "accept, reject, or modify, in whole or in part." 28 U.S.C. § 636(b)(1)(C). Where a party timely objects to a magistrate judge's report and recommendation, then the court is required to "make a *de novo* determination of those portions of the [report and recommendation] to which objection is made." 28 U.S.C. § 636(b)(1). A court is not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985). Because Plaintiff objects to Judge Baldwin's R&R, the Court reviews the issues *de novo*.

### II.    ANALYSIS

The magistrate judge concluded that there was no way to conceive or construe any specific set of circumstances under which the conclusory statements in Plaintiff's complaint would give rise to any federal constitutional or statutory right. (ECF No. 17.) Plaintiff objected to the magistrate judge's conclusions, arguing that 1) the complaint was improperly dismissed with

1  prejudice, because he could amend to clarify his claims; 2) the magistrate judge

2  failed to liberally construe pro se pleadings; 3) that he made plausible federal

3  claims; and 4) the magistrate judge misapplied the Rule 8 standard. (ECF No.

4  19.)

### a. Objection to Improper Dismissal with Prejudice

5

6      The Court finds that Plaintiff's objections all address whether his claims

7  should have been dismissed with prejudice. Therefore, the Court will consider

8  whether Plaintiff's complaint was actually futile and could not be amended to

9  state a claim. Rule 8 requires that facts alleged must raise the claim "above the

10  speculative level" and make direct or inferential allegations about "all the material

11  elements necessary to sustain recovery under *some* viable legal theory." Fed. R.

12  Civ. P. 8; *Hunt v. Zuffa, LLC*, 361 F. Supp. 3d 992, 999 (D. Nev. 2019). A dismissal

13  should not be without leave to amend unless it is clear from the face of the

14  complaint the action is frivolous and could not be amended to state a federal

15  claim, or the district court lacks subject matter jurisdiction over the action. *See*

16  *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *O'Loughlin v. Doe*, 920

17  F.2d 614, 616 (9th Cir. 1990). The Court finds Plaintiff's claims should be

18  dismissed for failure to state a claim, but that given his pro se status and the

19  state of his complaint, amendment is not futile for most claims.

### i. Civil RICO Claim

20

21      The elements of a civil RICO claim are (1) conduct (2) of an enterprise (3)

22  through a pattern (4) of racketeering activity (known as 'predicate acts') (5)

23  causing injury to plaintiff's business or property. *United Broth. Of Carpenters and*

24  *Joiners of America v. Building and Const. Trades Dept., AFL-CIO*, 770 F.3d 834,

25  837 (9th Cir. 2014). A defendant engages in a pattern of racketeering activity by

26  committing at least two enumerated predicate criminal acts within a specified

27  time frame. *Hunt v. Zuffa, LLC*, 361 F. Supp. 992, 1000 (D. Nev. 2019).

28  Personal injuries are not compensable under RICO. *Id.*

4

The heightened pleadings standards applicable to fraud claims under Federal Rule of Civil Procedure 9(b) apply to federal civil RICO actions. *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991). Rule 9(b) requires that the circumstances constituting fraud are stated with particularity, including the time, place, and specific content of the false representation. *Schreiber c. Distributing Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1400 (9th Cir. 1986)). Rule 9(b) does not allow a complaint to "merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant." *Swartz v. KPMG LLP*, 475 F.3d 756m 764-65 (9th Cir. 2007).

In his amended complaint, Plaintiff argues that the Defendants formed an "association-in-fact enterprise engaged in the commercial propagation of violent, anti-social, and racially degrading content under the guise of music and art." (ECF No. 11 at 3.) His allegations of racketeering activity include one phrase about wire fraud, one phrase about mail fraud, an allegation of "obstruction and suppression" and an allegation of "commercial deception." (*Id.*) Plaintiff does not offer any facts to prove that the Defendants formed an enterprise beyond this conclusory statement. His claims about the alleged criminal acts lack sufficient factual allegations. He does not differentiate between the actions of each Defendant. Plaintiff claims that his damages are "behavioral conditioning, psychological distress, and incarceration," which are not harms that he suffered to his business or property. (ECF No. 11 at 4.) For these reasons, Plaintiff fails to state multiple elements of his RICO claim, and it is dismissed.

### ii. Civil Conspiracy

"In Nevada, an actionable civil conspiracy is defined as a combination of two or more persons, who by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage." *Century Surety Co. v. Prince*, 265 F. Supp. 3d 1182, 1194 (D. Nev. 2017) (citing

*Flowers v. Carville*, 266 F.Supp.2d 1245, 1249 (D. Nev. 2003); *see also Cadle Co. v. Woods & Erickson*, LLP, 345 P.3d 1049, 1052 (Nev. 2015) ("In Nevada, however, civil conspiracy liability may attach where two or more persons undertake some concerted action with the intent to commit an unlawful objective, not necessarily a tort."). In addition, a plaintiff must specify the manner in which each defendant joined and participated in the conspiracy. *Lawrence v. Bank of America*, No. 2:09-cv-2061-JCM-LRL, 2010 WL 11531236 at *1 (D. Nev. 2010) (citing *Arroyo v. Wheat*, 591 F. Supp. 141, 143 (D. Nev. 1984)).

Plaintiff claims that Defendants coordinated their marketing and distribution of content and intentionally failed to disclose the psychological risks of their products. (ECF No. 11 at 5.) He argues that the Defendants intended to "normalize dysfunction and internalized racial degradation" and that their efforts resulted in "increased violence, incarceration, mental illness, and intergenerational harm." (*Id.*) Plaintiff's claim that the Defendants acted in concert is conclusory, and he does not allege facts that indicate how the Defendants would have coordinated their activities. Additionally, while the goals that Plaintiff describes are concerning, normalizing dysfunction and internalized racial degradation is not a cognizable unlawful objective or tort. *See Moonin v. Nevada ex rel. Dept. of Public Safety Highway Patrol*, 960 F. Supp. 2d 1130, 1142-43 (D. Nev. 2013) (finding a wrong demanding political redress is not a wrong warranting legal redress to meet unlawful objective standard). Therefore, Plaintiff's claim for civil conspiracy is dismissed.

### iii. Deployment of Artificial Intelligence as Civil Conspiracy Tool

Deployment of artificial intelligence as a civil conspiracy tool is not a separate cause of action under federal or state law, and therefore the Court dismisses it with prejudice.

1

### iv. Negligent Failure to Warn

"To state a claim for negligence under Nevada law, a plaintiff must allege: (1) the existence of a duty of care; (2) breach of that duty; (3) legal causation; and (4) damages." *Underwood v. O'Reilly Auto Parts, Inc.*, 671 F.Supp.3d 1180, 1189 (D. Nev. 2023) (citing *DeBoer v. Sr. Bridges of Sparks Fam. Hosp.*, 128 Nev. 406, 282 P.3d 727, 732 (2012)). In failure to warn cases, a defendant's duty to warn "exists only where there is a special relationship between the parties, and the danger is foreseeable." *Sims v. General Telephone & Electronics*, 107 Nev. 516, 521 (Nev. 1991). A special relationship must be proven by the plaintiff by showing that "(1) the conditions would cause a reasonable person to impart special confidence and (2) the trusted party reasonably should have known of that confidence." *Giles v. General Motors Acceptance Corp.*, 494 F.3d 865, 881 (9th Cir. 2007) (citing *Mackintosh v. Cal. Fed. Sav. & Loan Ass'n*, 113 Nev. 393, 402 (Nev. 1991) (per curiam)). Plaintiff fails to argue a cognizable special relationship between himself and the Defendants, claiming only that Defendants "owed a duty of care to the general public, especially . . . youth and marginalized communities." (ECRF No. 11 at 6.) Therefore, Plaintiff's claim for negligent failure to warn is dismissed.

### v. Strict Product Liability

Plaintiff alleges two theories of strict products liability: design defect and failure to warn. (ECF No. 7.) To bring a claim for strict product liability for a design or manufacturing defect in Nevada, a plaintiff must demonstrate that "(1) the product at issue was defective, (2) the defect existed at the time the product left the manufacturer, and (3) the defect caused the plaintiff's injury." *Underwood v. O'Reilly Auto Parts, Inc.*, 671 F.Supp.3d 1180, 1190 (D. Nev. 2023). A failure to warn theory requires the plaintiff to show that the manufacturer failed to provide an adequate warning for the use or foreseeable misuse of a product. *Underwood v. O'Reilly Auto Parts, Inc*, 699 F. Supp. 3d 1049, 1058 (D. Nev. 2023).

Plaintiff states in his complaint that Defendants' music was "sold and marketed as human expression" but was "covertly generated by AI." (ECF No. 11 at 9.) This is insufficient to demonstrate that Defendants created a defective product, or that warnings were required. He also fails to state a cognizable injury to himself, because he only alleges that it "promoted violent, antisocial behaviors and addiction." (*Id.*) Therefore, Plaintiff's strict product liability claim is dismissed.

### vi. Intentional or Negligent Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress under Nevada law, a plaintiff must allege (1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress, and (3) actual or proximate causation." *Evans v. Hawes*, 718 F. Supp. 3d 1351, 1373 (D. Nev. 2024), *reconsideration denied*, 2:22-CV-02171-JAD-DJA, 2024 WL 3330248 (D. Nev. July 8, 2024) (citing *Star v. Rabello*, 97 Nev. 124, 125 (1981)). "Extreme and outrageous conduct" is "that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Martin v. Papillon Airways, Inc.*, 910 F.Supp.2d 1160, 1166 (D. Nev. 2011) (citing *Maduike v. Agency Rent-A-Car*, 114 Nev. 1, (1998)).

"A claim of negligent infliction of emotional distress requires the plaintiff to show that the defendant acted negligently (i.e., breached a duty owed to plaintiff) and 'either a physical impact ... or, in the absence of physical impact, proof of serious emotional distress causing physical injury or illness.'" *Evans*, 718 F.Supp.3d at 1373 (quoting *Barmettler v. Reno Air. Inc.*, 114 Nev. 441, 448 (1998)).

Plaintiff argues that Defendant's "cultivated and distributed media content that featured graphic depictions and glorifications of rape, murder, suicide, child abuse, racial degradation, and self-hatred under the guise of entertainment."

(ECF No. 11 at 6.) Plaintiff has not demonstrated sufficient facts that the Defendants owed any duty to Plaintiff nor acted with the intention of, or reckless disregard for, causing emotional distress. Therefore, his claims of both intentional and negligent infliction of emotional distress are dismissed.

### vii.  Violation of Civil Rights Under Section 1983

Section 1983 is the vehicle through which private parties sue state actors for violations of their constitutional rights, such as those under the Due Process and Equal Protection Clauses. 42 U.S.C. § 1983. To maintain a claim under Section 1983, a plaintiff must prove that he was "deprived of a right secured by the Constitution" by a defendant that "acted under color of state law." *Wright v. Service Employees International Union Local 503*, 48 F.4th 1112, 1121 (9th Cir. 2022). For private actors such as Defendants to qualify as state actors under Section 1983, they must meet the (1) state policy requirement, and (2) the state actor requirement. *Id.* (citing *Collins v. Womancare*, 878 F.2d 1145, 1147 (9th Cir. 1989)).

The state policy requirement asks whether the claimed constitutional deprivation resulted from "the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the state is responsible." *Id.* at 1122 (quoting *Ohno v. Yasuma*, 723 F.3d 984, 994 (9th Cir. 2013) (citation omitted)).

There are four tests under which a private defendant can be considered a "state actor" for purposes of § 1983 action: the public function test, the joint action test, the state compulsion test, and the governmental nexus test. *Wright*, 48 F.4th at 1122.

The conduct of which that Plaintiff complains is "operat[ing] within an ecosystem where state officials failed to regulate" entertainment media and "systematic indifference or complicity by government actors." (ECF No. 11 at 12.) Plaintiff claims that this is a violation of civil rights. This is not an identifiable

right, rule of conduct, or action by a person for whom the state is responsible. Plaintiff also offers no additional argument to claim that the private Defendants in his complaint are state actors. Indifference and complicity are insufficient allegations to meet the standard for any of the four state actor tests. Plaintiff therefore fails on both elements of a Section 1983 action, and the claim is dismissed against all Defendants.

### viii.  Violation of Substantive Due Process

Substantive due process "forbids the government from depriving a person of life, liberty, or property in such a way that shocks the conscience or interferes with the rights implicit in the concept of ordered liberty." *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998). This includes "those personal activities and decisions . . . deeply rooted in our history and traditions." *Washington v. Glucksberg*, 521 U.S. 702, 727 (1997). "Those rights are few, and include the right to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, to abortion, and to refuse unwanted lifesaving medical treatment." *Id.*

The same state actor requirement applies to claims of due process violations as it does for Section 1983. Plaintiff alleges that the content produced by the Defendants "is sufficiently linked to state actor NDOC and Nevada Media services" because they provided music platforms inside of prison. (ECF No. 11 at 8.) This is insufficient to meet the standard under any state action test. Therefore, all due process claims against the private Defendants are dismissed.

The Due Process Clause does not place an affirmative obligation on the state to proactively protect the life, liberty, and property of its citizens. U.S. Const. amend. 14; *DeShaney v. Winnebago Cnty. Dept. of Soc. Services*, 109 S. Ct. 998, 1004 (1989). There is an exception to this general rule for those who have a "special relationship" with the state, such as when an individual is incarcerated, or when the state affirmatively places the plaintiff in danger by acting with

deliberate indifference to a known or obvious danger. *Patel v. Kent School Dist.*, 648 F.3d 965, 917-2 (9th Cir. 2011).

Under the first exception, a state actor can be subject to liability under a "special relationship" theory where the plaintiff's freedom to care for himself and provide for basic needs is impaired by incarceration, and the state simultaneously "fails to provide for his basic needs—e.g., food, clothing, shelter, medical care, and reasonable safety." *Deshaney*, 489 U.S. at 189. A state actor violates its constitutional duty to provide conditions of reasonable health and safety to detained individuals when:

> (i) [It] made an intentional decision with respect to the conditions under which the plaintiff was confined;
>
> (ii) those conditions put the plaintiff at substantial risk of suffering serious harm;
>
> (iii) the [government or private entity] did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved ...; and
>
> (iv) by not taking such measures, the [government or private entity] caused the plaintiff's injuries.

*Roman v. Wolf*, 977 F.3d 935, 943 (9th Cir. 2020).

The second exception for state-created danger only applies where there is "affirmative conduct on the part of the state in placing the plaintiff in danger" and where the state acts with "deliberate indifference." *Patel*, 648 F.3d at 974. Deliberate indifference requires a state actor to have a culpable mental state and an intention to expose the plaintiff to risk without regard to the consequences to the plaintiff. *Id.* (citing *L.W. v. Grubbs*, 92 F.3d 894, 898-899 (9th Cir. 1996)).

Plaintiff asserts that his "right to personal autonomy, psychological integrity, and informed agency" was violated because Defendants NDOC and

11

Nevada Media Services failed "to regulate or provide oversight for the psychological dangers" of fellow Defendant's media. (ECF No. 11 at 8, 12.) Plaintiff's allegations are insufficient meet the pleading standard under both the special relationship and state-created danger theory because he does not sufficiently claim that the state actors made intentional decisions regarding his safety while incarcerated to establish a culpable mental state. Therefore, his claims under the Due Process Clause are dismissed.

### ix. Fraudulent Misrepresentation and Omission

To state a claim for intentional misrepresentation in Nevada, the plaintiff must show (1) a false representation made by the defendant; (2) defendant's knowledge or belief that the representation is false (or insufficient basis for making the representation); (3) defendant's intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation; (4) plaintiff's justifiable reliance upon the misrepresentation; and (5) damages. *Weingartner v. Chase Home Finance, LLC*, 702 F.Supp.2d 1276, 1289-90 (D. Nev. 2010) (citing *Bulbman, Inc. v. Nev. Bell*, 108 Nev. 105, 111 (1992)). Under Federal Rule of Civil Procedure 9(b), circumstances constituting fraud or mistake must be stated with particularity. Fed. R. Civ. P. 9(b); *Id.*

In his complaint, Plaintiff does not argue that Defendants knew that the representation was false nor their intention to induce Plaintiff to act or refrain from acting, and neither does he describe with any detail how he relied on the misrepresentations to suffer damages. Therefore, his claim for fraudulent misrepresentation is dismissed.

### x. Unjust Enrichment

Unjust enrichment is a claim for an equitable substitute for a contract. *Kennedy v. Carriage Cemetery Services, Inc.*, 727 F.Supp.2d 925, 932 (D. Nev. 2010). "Unjust enrichment exists when the plaintiff confers a benefit on the defendant, the defendant appreciates such benefit, and there is 'acceptance and

retention by the defendant of such benefit under the circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof.'" *Hunt*, 361 F. Supp. 3d at 1008 (citing *Certified Fire Prot. Inc. v. Precision Constr.*, 128 Nev. 371, 380 (2012)). Because the Plaintiff does not claim he has a contractual relationship with the Defendants or conferred any benefit upon them, this claim is dismissed.

### xi.  Violation of Florida Deceptive and Unfair Trade Practices Act

To state a claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA"), Plaintiff must establish (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Ounjian v. Globoforce, Inc.*, 89 F.4th 852, 860 (11th Cir. 2023) (citing *KC Leisure, Inc. v. Haber*, 972 So. 2d 1069, 1073 (Fla. Dist. Ct. App. 2008)).

Plaintiff argues that the Defendants violated FDUPTA by failing to disclose the use of artificial intelligence in content creation. (ECF No. 11 at 11.) He claims that customers relied on this omission to purchase, stream, and emotionally invest in the content that Defendants produced. (*Id.*) Plaintiff fails to offer sufficient facts regarding the actual use of artificial intelligence, the fact that consumers did not know or expect that artificial intelligence was being utilized, or that it resulted in actual damages to himself or other consumers. Accordingly, this claim is dismissed.

### III.  CONCLUSION

It is therefore ordered that Judge Baldwin's Report and Recommendation (ECF No. 17) is ADOPTED to the extent that it dismisses Plaintiff's complaint.

It is further ordered that Plaintiff's application to proceed *in forma pauperis*, (ECF No. 3) is GRANTED.

It is further ordered that Plaintiff's amended complaint, (ECF No. 11), be DISMISSED WITHOUT PREJUDICE. Plaintiff's claim for "deployment of artificial

intelligence as a civil conspiracy tool" is dismissed with prejudice. All of Plaintiff's other claims are dismissed without prejudice and with leave to amend.

It is further ordered that Plaintiff's other miscellaneous motions, (ECF Nos. 3-6, 3-7, 12, 15), be DENIED as moot.

Dated this 21st day of November, 2025.


_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE